IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STATE OF FLORIDA, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-155 (SLR) |
| | ) | |
| ABBOTT LABORATORIES, | ) | |
| FOURNIER INDUSTRIE ET SANTÉ, and | ) | |
| LABORATOIRES FOURNIER, S.A., | ) | |
| | ) | |
| Defendants. | ) | |

## OPPOSITION TO PLAINTIFF STATES' MOTION TO CONSOLIDATE WITH CASES 05-340, 05-1512, AND 03-120

### INTRODUCTION

The twenty-six Plaintiff States seek to skip the normal civil litigation process and inject themselves into a trial scheduled to occur in November 2008—less than eight months after they filed their Complaint—a trial which already includes at least three groups of private plaintiffs that have been litigating this case for over three years.  And despite their assertions to the contrary, the States' claims involve many dozens of varied state laws and rules that are not implicated in the private cases.  Defendants would be severely prejudiced—both procedurally and before the jury—if the States are allowed to consolidate their cases with the long-pending private litigations.

The States' motion to consolidate is all about them.  The States claim that *they* have been "investigating this case for over a year and a half," but fail to mention the complete lack of discovery by defendants caused by the States' failure to initiate an action until a few months before the trial of the private-plaintiff actions.  They allude to their own cooperation with the private *plaintiffs* in this matter, but ignore the fact that they have provided *no* information at

- 1 -

all to defendants.  They point to the fact that the allegations in their complaint are similar to those stated by private plaintiffs, but fail to acknowledge that their allegations raise different factual and legal issues.  And they state that *they* are ready to join in the already-commenced briefing on summary judgment, but fail to note that Abbott and Fournier are just beginning to analyze the States' claims under the various state rules and law and have yet to request, collect or review any State documents to determine whether there is a basis for dispositive motions based on notice or standing requirements, statutes of limitations, and issues of reliance, causation, and mitigation.

Thus, all the States' brief really says is that the States believe that *they* will be well served by taking advantage of the work done by the private plaintiffs, and by joining them at trial.  What they do *not* say is that Abbott and Fournier have had no chance to take discovery of the States, to develop their defenses to the States' claims, or to evaluate dispositive (or partially-dispositive) motions based upon, for example, issues such as notice or standing requirements and statutes of limitations, reliance, causation, and mitigation.

But this is not the only prejudice to defendants that is at issue here.  As this Court recognized at the April 3, 2008 Status Conference when it first rejected the States' motion for consolidation, the presence of multiple states' attorneys general implicates issues of fairness and prejudice to the defendants.  This case already involves an unusually large number of different plaintiffs—two competitors, two proposed classes, and a number of opt-outs.  Adding 26 government representatives to the already plaintiff-heavy side of the case simply "piles" additional weight against defendants in a private-party against private-party litigation.  This creates a significant risk of prejudice to defendants.  Status Conference Tr. at 50-51 (Exhibit A).

This prejudice, taken together with the fact that defendants have not had any discovery to date, outweighs any benefit of allowing the States to participate in the November trial.

## ARGUMENT

This Court has "broad discretion" to grant or deny consolidation in connection with its powers to manage its docket. *See, e.g., Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991) (*citing Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964)).  And, while common issues are "a prerequisite to consolidation," "[t]he mere existence of common issues… does not require consolidation." *Id.* (*citing Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F. Supp. 1298, 1309 (D. Del. 1981)).  When considering a motion for consolidation under Rule 42(a), a court must weigh the benefits of consolidation against any prejudice. *See, e.g., In re Consol. Parlodel Litig.,* 182 F.R.D. 441, 444 (D.N.J. 1998).

### I.     CONSOLIDATING THE STATE ACTIONS WITH THE PRIVATE PLAINTIFF CASES WOULD PREJUDICE ABBOTT AND FOURNIER'S ABILITY TO DEFEND THESE ACTIONS.

The States contend that they have been "investigating this case for over a year and a half" and that they have "regularly conferred" with counsel for the private plaintiffs.  It is one thing for the States to assert that *they* are ready to try this case.  But what about the defendants?  While the States have had eighteen months to prepare, during which time they have issued CIDs and had access to the entire discovery record including all of the documents produced by Abbott and Fournier in the private actions, Abbott and Fournier have had no opportunity whatsoever to take discovery of the States.

The States' assertion that their cases are identical to the private actions and require no additional preparation by Abbott and Fournier is meritless.  While the States assert

that the factual allegations of each complaint, and the legal theories they rely upon, are "substantively identical" to those in the private actions, they ignore the fact that Abbott and Fournier have had no opportunity to investigate the application of the various state statutes to *governmental* actions to identify specific legal defenses that they may have available, such as notice or standing requirements and statutes of limitations.  Nor have Abbott and Fournier had sufficient time to review the *parens patriae* law—which varies from state to state and which may provide a basis for unique defenses or separate dispositive motions.  And Abbott and Fournier have not had an opportunity to take discovery of the States, and have therefore had no opportunity to explore possible defects in factual elements of the States' claims, including issues of reliance, causation, and mitigation, or to develop evidence in support of their claims.

Forcing Abbott and Fournier to defend the States' claims without sufficient discovery would severely hamper Abbott and Fournier's ability to present a complete defense, and would result in severe prejudice.  The States chose to be interested-but-untouchable observers for the last eighteen months.  They reaped the benefits of discovery taken of Abbott and Fournier without subjecting themselves to discovery.  Now, close to trial in the private litigations, the States are attempting to do an end-run around the well-established civil litigation process.  The States' tactic of waiting in the wings while the private litigations played out should not be rewarded.

## II.    PERMITTING THE STATES TO APPEAR AT TRIAL WITH THE PRIVATE PLAINTIFFS WOULD RISK PREJUDICING ABBOTT AND FOURNIER IN THE EYES OF THE JURY.

As this Court has recognized, this case is already unusually "plaintiff-heavy." The plaintiffs lined up to face defendants at trial include two purported nationwide classes, two competitors, and a long list of opt-out plaintiffs.  Adding the considerable weight of the

governments of 26 states to this large pile of plaintiffs risks prejudicing Abbott and Fournier in the eyes of the jury.

A jury instruction such as the one suggested by the states, that "state Attorneys General should be viewed no more or no less favorably than the private plaintiffs," would do nothing to counterbalance the sheer weight in terms of number of plaintiffs that 26 attorneys general would add to the case on the plaintiffs' side.

The States' choice of words is significant.  The States cite cases in which State Attorneys General "have litigated side by side" with private plaintiffs.  But they do not assert that the State Attorneys General appeared *en masse* at trial with private litigants, or that the issue of prejudice to the defendants was ever litigated or even considered by any of those courts.

Most of the cases cited by the States were multidistrict litigations ("MDL") "coordinated or consolidated for pretrial purposes" under 20 U.S.C. § 1407, not for trial as the States seek here.  As the Court is well aware, in MDL litigations, each case is sent back to the transferor court for trial.  For example, the States cite *In re Pharmaceutical Industry Average Wholesale Price Litigation*, No. MDL 1456-01-12257-PBS (D. Mass) ("AWP Litigation").  In that case, a handful of State actions were transferred to the District of Massachusetts, but each State case will go back to the transferor court for trial.  In fact, the district judge overseeing the MDL has proposed sending the Nevada and Montana actions back to the transferor courts even for rulings on summary judgment motions.  *In re Pharm. Indus. Average Wholesale Price Litig.*, No. 1:01-cv-12257-PBS, Memorandum and Order, Sept. 12, 2007, Docket No. 4708 (attached hereto as Exhibit B).  The only claims that went to trial in the District of Massachusetts in the AWP Litigation were claims by *private* litigants on behalf of Massachusetts consumers.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20 (D. Mass. 2007).

Moreover, in most of the cases cited by the States, no State Attorney General actually went to trial (mainly due to settlements before trial), so the issues of which plaintiffs should be grouped for trial (if any), and the prejudice to the defendants was never litigated—and the States cite no ruling in which the risk of prejudice noted by the Court in its April 3, 2008 ruling was addressed. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.,* No. MDL-1317-99 (S.D. Fla.); *In re Buspirone Antitrust Litig.,* MDL 1413 (S.D.N.Y.); *In re CardizemCD Antitrust Litig.,* No. MDL 1278 (E.D. Mich); *In re Infant Formula Multidistrict Litig.,* No. 91-878 (N.D. Fla.); *In re Remeron End-Payor or Antitrust Litig.,* No. 02-2007, 04-5126 (D.N.J.); *State of Ohio v. Bristol-Myers Squibb Co.*, 02-civ-01080 (D.D.C.).

Nor do the States point to any case in which the States prepared for 18 months and then attempted to enter the case on the eve of trial, effectively denying the defendants any discovery and the opportunity to prepare their defense and file dispositive motions. The prejudice to defendants in this case outweighs any benefit of consolidation.

## **CONCLUSION**

For all the foregoing reasons, the Plaintiff States' Motion to Consolidate should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com

RICHARDS, LAYTON & FINGER

*/s/ Anne Shea Gaza*

_____
Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
One Rodney Square
Wilmington, DE  19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com

OF COUNSEL:                                OF COUNSEL:

William F. Cavanaugh, Jr.                  William Baer
Thomas W. Pippert                          James L. Cooper
Chad J. Peterman                           Anne P. Davis
Alexis Deise                               ARNOLD & PORTER LLP
PATTERSON, BELKNAP, WEBB & TYLER LLP       555 Twelfth Street, N.W.
1133 Avenue of the Americas                Washington, DC  20004
New York, NY  10036-6710

  *Attorneys for Abbott Laboratories*

                                           Timothy C. Bickham
                                           STEPTOE & JOHNSON LLP
                                           1330 Connecticut Avenue, N.W.
                                           Washington, DC  20036-1795

                                           *Attorneys for Fournier Industrie et Santé*
                                           *and Laboratoires Fournier, S.A.,*

June 2, 2008
2349424

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Elizabeth G. Arthur
> R. Scott Palmer
> OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF FLORIDA
>
> Craig S. Farringer
> Susan Phan
> OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on June 2, 2008 upon the following individuals in the manner indicated:

## BY ELECTRONIC MAIL

*Representing the Plaintiff States:*

Elizabeth G. Arthur
**Elizabeth.Arthur@myfloridalegal.com**
R. Scott Palmer
**Scott.Palmer@myfloridalegal.com**
OFFICE OF THE ATTORNEY GENERAL
FOR THE STATE OF FLORIDA

Craig S. Farringer
**craig.farringer@dc.gov**
Susan Phan
**susan.phan@dc.gov**
OFFICE OF THE ATTORNEY GENERAL
FOR THE DISTRICT OF COLUMBIA

*Representing the Fournier Defendants:*

Frederick L. Cottrell, III
**cottrell@rlf.com**
Anne Shea Gaza
**gaza@rlf.com**
RICHARDS, LAYTON & FINGER

William Baer
**william.baer@aporter.com**
James L. Cooper
**james.cooper@aporter.com**
Anne P. Davis
**anne.davis@aporter.com**
ARNOLD & PORTER LLP

Timothy C. Bickham
**tbickham@steptoe.com**
STEPTOE & JOHNSON LLP

*/s/ Mary B. Graham*

_____
Mary B. Graham (#2256)

2319602

# EXHIBIT A

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                IN AND FOR THE DISTRICT OF DELAWARE
 2                        - - -
      TEVA PHARMACEUTICALS  USA,    :  CIVIL ACTION
 3    INC.,and TEVA                 :
      PHARMACEUTICAL INDUSTRIES,    :
 4    LTD.,                         :
           Counterclaim Plaintiffs  :
 5              v.                   :
                                    :
 6    ABBOTT LABORATORIES,          :
      FOURNIER INDUSTRIE ET         :
 7    SANTE, and LABORATOIRES       :
      FOURNIER S.A.,                :
 8         Counterclaim Defendants. :  NO. 02-1512 (SLR)
      --------------------------    :  (Consolidated)
 9    IMPAX LABORATORIES, INC.,     :
           Counterclaim Plaintiff   :  CIVIL ACTION
10                                  :
                vs.                 :
11                                  :
      ABBOTT LABORATORIES,          :
12    FOURNIER INDUSTRIE ET         :
      SANTE, and LABORATOIRES       :
13    FOURNIER S.A.,                :  NO. 03-120 (SLR)
           Counterclaim Defendants. :  (Consolidated)
14    --------------------------    :
      IN RE TRICOR DIRECT           :  CIVIL ACTION
15    PURCHASER ANTITRUST           :  NO. 05-340 (SLR)
      LITIGATION                    :  (Consolidated)
16    --------------------------    :
      IN RE TRICOR INDIRECT         :  CIVIL ACTION
17    PURCHASER ANTITRUST           :  NO. 05-360
      LITIGATION                    :  (Consolidated)
18
                                    - - -
19                                  Wilmington, Delaware
                                    Thursday, April 3, 2008
20                                  10:07 o'clock, a.m.
                                    - - -
21
      BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.
22
                                    - - -
23


24                                  Valerie J. Gunning
                                    Official Court Reporter
25
```

46

1    done what I have to do.  It might not be pretty, but I give
2    you decisions.
3         MR. CAVANAUGH:  Okay.
4         THE COURT:  I will look at my trial calendar,
5    but so far I am double-booked pretty much through the first
6    quarter.
7         (Pause.)
8         THE COURT:  And, quite frankly, if it's my
9    decision, giving me more time isn't going to help me because
10   I will probably end up doing it anyway.  I'm as bad as you
11   all are.
12        So I think the better option at this point is
13   for me to give you another two weeks, to give you basically
14   a full month between the pretrial and trial, if that's the
15   real issue.  And I will do my best to get decisions that
16   are articulate, maybe right, maybe wrong, but at least
17   you will understand what they are.  So let me move the
18   pretrial.
19        (Pause.)
20        THE COURT:  And I'm looking at Monday,
21   October 6th, at 4:30 p.m.  That gives you a month.
22        MR. CAVANAUGH:  Thank you, your Honor.
23        THE COURT:  Because you'll probably get my
24   decision Monday, October 6th, at 4:00 o'clock p.m., or the
25   Friday before, if I'm really on it.

47

1         Unfortunately, my other law clerk has accepted a
2    position with one of the firms in town, so she's precluded
3    from helping me with 90 percent of the cases, Ms. Ingersoll.
4    So anyway, this has not been my best year in terms of
5    stability.
6         All right.  So with respect to Daubert
7    motions -- now, let me say something.  While I don't allow
8    motions in limine in my patent litigation and I won't in
9    this case either, because I find that, again, you just paper
10   things too much.  What you do is you identify any
11   evidentiary disputes that are left in your pretrial order.
12   Daubert motions are something a little different.  I guess I
13   will allow a motion practice with that.  But I'm going to
14   limit it to the kind of motion in limine practice I used to
15   have, which is two weeks -- well, let me think this through
16   a little bit more.
17        You have -- actually, if there's a real problem
18   with an expert -- I've never understood what to do with
19   that.  If expert discovery is done and you've used a
20   bad expert and I agree that you've used a bad expert, do
21   you have the opportunity to go back and get a new expert,
22   or --
23        MR. VAN NEST:  You're done.  You're done, your
24   Honor.
25        MR. CAVANAUGH:  Yes.  You're stuck.

48

1         THE COURT:  So I don't necessarily need to --
2    which means that I could do Daubert motions like I used to
3    do motions in limine, which is two weeks before the
4    pretrial, you can file whatever Daubert motions you want.  A
5    week before the pretrial, you file your responses, and then
6    I basically talk to you about them.
7         That's what I think of Daubert motions.
8    Obviously, I don't think too much of them.
9         So with that in mind, that would be, I think,
10   Daubert motions due on September 22nd, with responses due on
11   September 29th.  And if they are not obvious to me and I
12   deny them as a matter of course, it's basically another
13   thing we talk about at the pretrial conference.
14        All right.  Now, I intend to put this all in an
15   order with Valerie's help.  Obviously, if my recollection of
16   what I've said, with Valerie's help, is inconsistent with
17   what you understood this to be, then you, undoubtedly, will
18   let me know.  I know you all are not shy.
19        Now, that leaves us with the state AGs, and I
20   guess as long as there are some representatives here, we
21   might as well at least let them earn their money and talk
22   about how their case fits in with all of this.
23        Anybody?  Yes, ma'am.
24        MS. ARTHUR:  Good morning, your Honor.  I'm
25   Elizabeth Arthur, from the State of Florida, and we have

49

1    recently filed this case, as you know.  However, we have
2    been working closely with the Indirect Class counsel, the
3    Direct Class counsel, and the competitors, in investigating
4    this case.  We've had access to all of the depositions and
5    expert reports.  We have issued our own civil investigative
6    demands and received documents from both Abbott and
7    Fournier, which we have reviewed and analyzed and put in our
8    complaint together.
9         So while it may look like we're new to the
10   party, we are very well versed in this case, and we are
11   ready to proceed on the schedule that you have set for the
12   other cases.
13        THE COURT:  Now, tell me something.  I have not
14   had multiple state attorney generals interested in one case
15   that I have had.  One wonders whether there isn't some jury
16   impact with having not only all of these other plaintiffs
17   suing these four pharmaceutical defendants, but to have
18   multiple representatives of multiple states, I would have a
19   concern about that, because I want this case decided on the
20   factual and legal merits and not on how many plaintiffs
21   there are versus how many defendants there are.
22        So my question is, on the one hand, if, in fact,
23   the new case is ready to go to trial, I can understand the
24   economies of doing so, but I do have concerns about fairness
25   and allowing the States Attorney General to kind of pile

50

1  their weight on to an already uneven party.
2        MS. ARTHUR:  If I may respond to that,
3  your Honor, we will have Florida designated as the lead
4  and liaison counsel, so you will only have the Florida
5  Attorney Generals here participating with the other
6  plaintiffs.
7        THE COURT:  And will not the jury understand
8  that there are many, many more states involved?
9        MS. ARTHUR:  Yes, ma'am.  We'll be here on
10  behalf of them.
11        THE COURT:  Right.  Well, I have some concerns
12  about that, and I understand -- I mean, I am not sure, with
13  all these able counsel, that you're necessarily prejudiced
14  by not actually participating in this.  And my reason for
15  not letting you participate would be an issue of fairness
16  that I have some real concerns about.
17        At this point, I'm not inclined to let that case
18  go forward in sync if there's something you want to say in
19  connection with that, I'm happy to hear you, or some other
20  submission you'd like to make, I'm happy to hear that.
21        MS. ARTHUR:  I don't think that we would be
22  disruptive.  We have agreed to share experts.
23        THE COURT:  No, no.  It has nothing to do with
24  your actual participation.  It is with the perception that
25  19 state attorney generals bring to an already top-heavy

51

1  plaintiff-wise case, and that is a perception that I think
2  most juries could not ignore.
3        MS. ARTHUR:  I am sensitive to your perception
4  issues.  However, the attorney generals are in some states
5  the only representative for the consumers and the best
6  representative for the consumers.
7        THE COURT:  Well, and I'm not depriving you of
8  your ability perhaps to try a case, but I don't believe, and
9  I use this word advisedly, that you have an entitlement to
10  try it with this particular case.
11        MS. ARTHUR:  I understand your issues.  I just
12  want to make you aware that we are ready, if you would so
13  like us to proceed.
14        THE COURT:  Thank you much very much.
15        MS. ARTHUR:  Thank you.
16        MR. CAVANAUGH:  Your Honor, with respect to the
17  State AGs, I do think a status conference with them at some
18  point would be appropriate.
19        They say they're going to file an Amended
20  Complaint with additional states.  We don't even know how
21  many at this point.  We think there are motions to dismiss
22  as to some of their states as to statute of limitations.
23  There are parens patriae issues.  And then it's all well and
24  good they say they're ready.  We'd like some discovery of
25  them.

52

1        So I think that case needs to go on its own
2  path.
3        THE COURT:  All right.  Are there any other
4  issues that we should address this morning with respect to
5  the schedule that I have put in place?
6        Anyone?  Anyone?
7        MR. CAVANAUGH:  I don't think so, your Honor.
8        THE COURT:  All right.  If not, I will try to
9  get this memorialized in writing in the next day or two,
10  and, obviously, you've got my e-mail address if there are
11  issues that come up between now and then.
12        It will take me a minute to get out of my
13  computer, so go home.  Thank you very much.
14        (Counsel respond, "Thank you, your Honor.")
15        (Court recessed at 11:30 a.m.)
16              - - -
17
18
19
20
21
22
23
24
25

EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) | |
| AVERAGE WHOLESALE PRICE ) | |
| LITIGATION ) | MDL No. 1456 |
| ) | |
| THIS DOCUMENT RELATES TO: ) | CIVIL ACTION NO. |
| *State of Nevada v. American Home* ) | 01-CV-12257 |
| *Products, et al.,* ) | |
| Civil Action No. 02-CV-12086-PBS ) | |
| ) | |
| *State of Montana v. Abbott Labs.,* ) | |
| *Inc., et al.,* ) | |
| Civil Action No. 02-CV-12084-PBS ) | |

**MEMORANDUM AND ORDER**

September 12, 2007

Saris, U.S.D.J.

**I. INTRODUCTION**

The states of Nevada and Montana allege that pharmaceutical
manufacturers fraudulently overstate the published "average
wholesale prices" ("AWPs") of many of their prescription drugs to
the detriment of the states, which reimburse providers based on
AWPs.  The Judicial Panel on Multidistrict Litigation ("JPML")
transferred the cases to this Court for pretrial proceedings, as
part of the major multidistrict litigation ("MDL") on
pharmaceutical pricing.  Defendants move the Court to suggest
transfer of the cases back to the Federal courts in their home
states to decide summary judgment motions.  After hearing oral
argument, the defendants' motion is **ALLOWED**.  The Court suggests
that the Montana and Nevada cases be remanded to their Federal
courts of origin.

## II. PROCEDURAL HISTORY

In 2002, Montana filed a single complaint, Montana v. Abbott Laboratories, et. al., 02-CV-12084-PBS (Montana), and Nevada filed two complaints against two different sets of defendants, Nevada v. Abbott Laboratories, et. al., CV-2-00260 ("Nevada I"), and Nevada v. American Home Products, et. al., 02-CV-12086-PBS ("Nevada II").  Defendants removed all three cases to federal court and the JPML transferred the cases to this Court.  The states then moved to remand the cases, arguing that there were no federal issues substantial enough to confer federal jurisdiction. In 2003, this Court denied the motions to remand the Montana and Nevada II cases, but remanded Nevada I.  See Montana v. Abbott Labs, 266 F. Supp. 2d 250 (D. Mass. 2003).  After the states filed amended complaints, the defendants moved to dismiss.  In 2004, this Court allowed in part and denied in part the motions to dismiss.  See In re Pharm. Indus. Average Wholesale Price Litig., 321 F. Supp. 2d 187 (D. Mass. 2004).  The official cut-off for pretrial discovery was March 31, 2006, though some discovery was conducted through last summer as to defendant Baxter Healthcare Corporations and Baxter International, Inc.[1]

---

[1] On March 5, 2007, the Court allowed plaintiffs' motion to stay, with respect to Baxter, the Montana and Nevada cases (Docket No. 3806) for 120 days to allow the parties to develop an alternative schedule to deal with the remaining discovery issues for that defendant.  On June 21, 2007, plaintiffs filed an another motion to continue the stay which was denied by the Court on July 2, 2007.  The magistrate judge has reported there are no pending matters involving Baxter.  Accordingly, all discovery

and two third party depositions.  On February 8, 2007 the
defendants filed a joint motion for summary judgment in both the
<u>Montana</u> and <u>Nevada II</u> cases, as well as individual motions on
behalf of many of the over twenty defendants.  Montana also filed
a motion for partial summary judgment against certain defendants.
On the same date, defendants filed a motion to suggest transfer
of the <u>Montana</u> and <u>Nevada II</u> cases to their Federal courts of
origin.

### III. DISCUSSION

The defendants argue that the most efficient and practical
course is for this Court to suggest transfer now, rather than to
decide multiple summary judgment motions which address primarily
state law claims.[2]  Plaintiffs contend that the summary judgment
motions should be decided here, because this Court has experience
interpreting common issues including the meaning of AWP and the
imputation of knowledge based on government reports and other
documents that have been presented to this Court in several
proceedings.  Plaintiffs contend that remanding the cases now
would invite inefficiencies and inconsistencies that the MDL
referral was meant to diminish.

Under the statute governing MDL actions, "[e]ach action so

should now be finished.

[2] The Court has denied without prejudice any pending motions
for summary judgment so that they may be refiled in the
transferor Districts in light of my recent rulings.  <u>See</u> Docket #
4707.

transferred shall be remanded by the panel at <u>or before</u> the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." 28 U.S.C. § 1407(a)(emphasis added). While the MDL panel makes the ultimate decision of whether remand is appropriate, the panel looks to the transferee court to "suggest when it should order remand." Fed. Judicial Ctr., <u>Manual for Complex Litigation Fourth</u> § 20.13 (2004). "Whether Section 1407 remand is appropriate for an action in any particular multidistrict docket is based upon the totality of circumstances involved in that docket." <u>In re Managed Care Litig.</u>, 2006 U.S. Dist. LEXIS 26561 at *2 (J.P.M.L. 2006). One key factor in making this determination is "when remand will best serve the expeditious disposition of the litigation." <u>Manual for Complex Litigation Fourth</u> § 20.13. Thus, it is not necessary that the transferee court complete all pretrial proceedings before suggesting remand. <u>See In re Multidistrict Civil Actions Involving Air Crash Disaster Near Dayton</u>, 386 F. Supp. 908, 909 (J.P.M.L. 1975) ("It is not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him by the Panel, but rather that the transferee judge in his discretion will conduct the common pretrial proceedings with respect to the various actions and any additional pretrial proceedings as he deems otherwise appropriate.").

4

A section from the <u>Manual for Complex Litigation Fourth</u> is particularly instructive[3] in this situation:

> If summary judgment motions are pending, the transferee judge must consider whether to decide the motions or to transfer the cases back to the transferor districts. If the summary judgment motion pertains to one or few cases, or rests on application of the transferor court's conflicts-of-law and substantive law rules, the transferor judge may be able to decide the motions most efficiently. If the summary judgment motions involve issues common to all the cases centralized before the MDL court, however, the transferee judge may be in the best position to rule.

<u>Manual for Complex Litigation Fourth</u> § 22.36.

After reviewing the issues presented in the summary judgment motions, I believe it is appropriate to transfer the cases back to their home states at this time. This Court, as the MDL transferee court, has served several important functions for handling these pharmaceutical pricing cases. I have issued numerous extensive opinions to help transferor Federal courts and state courts to understand the complex world of drug pricing. In the class certification order, with the aid of an independent expert, I explained in detail the pharmaceutical industry and the reimbursement systems under private contracts, federal statutes and regulations, and state laws. See <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 230 F.R.D. 61, (D. Mass. 2005). This

---

[3]This text is found in section 2 of the <u>Manual for Complex Litigation Fourth</u>, which deals with mass torts. While the AWP litigation does not necessarily fit the definition of a mass tort, the section is nonetheless instructive for its guidance to an MDL court dealing with summary judgment motions in an MDL action involving plaintiffs in a substantial number of states.

included an analysis of the many parties involved, the
interactions between those parties, and the different systems for
physician administered drugs versus self administered drugs.  See
id.  After careful review of the relevant legislative history, I
also defined the meaning of "average wholesale price" in the
federal Medicare statute to accord with the plain meaning of
those terms.  See In re Pharm. Indus. Average Wholesale Price
Litig., 460 F. Supp. 2d 277 (2006).  Most recently, after a
twenty day bench trial, I found that three defendant
pharmaceutical companies unfairly and deceptively inflated drug
prices in violation of Massachusetts consumer protection laws.
See In re Pharm. Indus. Average Wholesale Price Litig., 491 F.
Supp. 2d 20 (D. Mass. June 21, 2007).  In that decision, I made
numerous factual findings regarding the conduct of the particular
defendant manufacturers and ruled on various legal issues raised
on summary judgment before trial, as well as the Daubert
challenge.  Finally, in the Montana and Nevada II cases
specifically, the magistrate judge and I have dealt with a
multitude of discovery matters and dismissal motions that have
prepared these cases for summary judgment proceedings.

     The remaining issues in the Nevada II and Montana cases
depend almost exclusively upon the application and interpretation
of substantive state laws, primarily relating to state Medicaid
benefits.  Neither Nevada nor Montana is seeking to recover

damages on behalf of Medicare Part B beneficiaries.[4]  (See Nevada Pl.'s Mem. in Opp. to Defs.' Joint Mot. for Summ. J. at 23; Montana Pl.'s Mem. in Opp. to Defs.' Joint Mot. for Summ. J.  at 22.)  The main issues in the summary judgment motions are the knowledge and expectations of each state regarding acquisition costs and spreads, and the meaning of AWP as used in certain state laws or administrative rules.  These issues are specific to their respective states and do not require the benefit of my experience grappling with the complexities of drug reimbursement under Medicare, although many of the issues are similar.

Furthermore, given the heavy burden on this docket, due in great part to various stages of this MDL, the Montana and Nevada II cases may be significantly delayed if they remain in this Court.  The federal government has entered with a storm of qui tam cases and there are related cases that have been removed from state court, or that involve generic drugs, wholesalers or publication companies.  It is in the interests of justice to return the cases to their home districts, so that the Federal courts in Montana and Nevada can begin dealing with the claims

---

[4] Nevada is still bringing a parens patriae claim on behalf of Nevada citizens in which it seeks only "civil penalties incurred by the Nevada Medicaid Program."  (Nevada Pl.'s Mem. in Opp. to Defs.' Joint Mot. for Summ. J. (Docket No. 3910) at 23.)  The state is not pursuing "claims on behalf of non-Medicaid state entities."  (Id. at 29.)  Similarly, Montana continues to press its parens patriae claims, but notes that damages are limited to those "incurred by the Montana Medicaid Program."  (Montana Pl.'s Mem. in Opp. to Defs.' Joint Mot. for Summ. J. (Docket No. 3902) at 22.)

and theories of the cases based on the Medicaid laws in the
states in which they sit.  <u>See</u> <u>Lexecon Inc. v. Milberg Weiss</u>
<u>Bershad Hynes & Lerach</u>, 523 U.S. 26, 34 (1998) (Section 1407
"obligates the Panel to remand any pending case to its
originating court when, at the latest, those pretrial proceedings
have run their course.").

The Court had originally deferred ruling on the motion to
transfer until the Court issued its decision in the bellwether
trial and because of pending mediation sessions with Eric Green.
However, the decision has now been issued and there is no reason
that a transfer would disrupt the mediation discussions, which I
believe all parties have agreed to.

**ORDER**

The defendants' motion to suggest transfer of the <u>Montana</u> and <u>Nevada II</u> cases to their Federal courts of origin (Docket No. 3685) is **<u>ALLOWED</u>**.

<u>S/PATTI B. SARIS</u>
United States District Judge