IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STATE OF FLORIDA, et al.,                    )
                                             )
         Plaintiffs,                         )
                                             )
    v.                                       ) Civ. No. 08-155-SLR
                                             )
ABBOTT LABORATORIES, FOURNIER                )
INDUSTRIE ET SANTE, and                      )
LABORATOIRES FOURNIER, S.A.,                 )
                                             )
         Defendants.                         )

## MEMORANDUM ORDER

At Wilmington this 23rd day of June, 2009, having reviewed the parties'
submissions regarding various discovery disputes (D.I. 76, 89, 92, 96, 101, 102);

IT IS ORDERED that:

1. **Rebate information.** Defendants seek discovery of the rebates plaintiffs
negotiate and receive for fenofibrate products. On behalf of the Medicaid entities they
represent, plaintiffs object on two grounds: (a) such information is confidential under
statute and/or contract; and (b) such information is not relevant.

2. With respect to the first objection, plaintiffs cannot use information as both a
shield and a sword; if the information is relevant, plaintiffs must disclose it or be subject
to adverse inferences at trial. Any problems with confidentiality can be resolved
through a protective order and appropriate redactions.

3. With respect to the second objection, the relevance of the rebate information

depends upon plaintiffs' damages theories.  If plaintiffs are limiting their damages claims to the difference between the cost of TriCor versus the hypothetical cost of the AB-rated generic substitutes for TriCor, the rebate information may not be relevant.[1]

4.  Plaintiffs, however, broadly claim that their "general economies . . . have sustained injury" due to defendants' "anti-generic strategy" in the entire "fenofibrate market."[2] (D.I. 1, ¶¶ 1-3, 133)  Given the fact that plaintiffs arguably exercise a substantial degree of control over "their economies" vis a vis health care,[3] they cannot shield the rebate information from discovery if they claim such broad-ranging damages.[4]

5.  **TriLipix.**  I agree with defendants that any drugs not on the market at the time of the conduct at issue are irrelevant and, therefore, defendants need not respond to any discovery requests seeking such information.

6.  **Pre-suit investigations** are protected by the attorney-client privilege and the work product doctrine; therefore, defendants need not respond to any discovery requests seeking such information.

---

[1]I.e., antitrust injury and damages would be limited to plaintiffs proving that defendants' conduct precluded the entry of the AB-rated generic substitutes for TriCor into a market over which defendants exercised monopoly power, forcing plaintiffs to pay more for the TriCor than they would for the generic substitutes.

[2]Not just the "market for AB-rated generic substitutes for TriCor."  (D.I. 92)

[3]Plaintiffs pay for drugs on behalf of individuals enrolled in various government programs, including Medicaid and self-insured employee benefit plans, and are required to bargain for the most competitive net prices they can obtain to control the cost of publicly provided or subsidized health care.

[4]In this regard, if plaintiffs disclose the rebate information, defendants must respond to plaintiffs' proposed discovery seeking "any information defendants have showing that plaintiff States did 'drive' demand to and away from drugs through these cost saving tools and hence eliminated or diminished antitrust injury."  (D.I. 101 at 1)

6. **Settlement agreements.** Absent extraordinary circumstances, I generally do not order the disclosure of settlement agreements, as such disclosure inhibits the very laudable purpose of settlement. Therefore, defendants need not respond to any discovery requests seeking such information.

7. **Inequitable conduct and international patent prosecution and litigation materials.** As the above topics are not related to any matters slated for trial in January 2010, defendants need not respond to any discovery requests seeking such information.

8. **Therapeutic interchange.** I agree that plaintiffs' interrogatory numbered 3 to Abbott should be limited to ANDA-related antitrust litigations filed since January 1, 2002 in which Abbott was a party.

9. **Protective order.** As per standard practice, any person who has access to confidential information within the purview of a protective order must sign a certification and be disclosed to opposing counsel before having access. This case presents no exceptional circumstances to this regimen. With respect to the treatment of defendants' confidential information that was produced to plaintiffs prior to the commencement of this litigation (e.g., through civil investigative demands), all documents produced by defendants relating to the subject matter of this litigation shall be treated in accordance with the one operative set of rules established by the

3

protective order.[5]

United States District Judge

---

[5]In this regard, plaintiffs' proposal to treat pre-litigation documents differently is fraught with potential discovery disputes, from identifying which documents were in fact produced prior to litigation (what happens with duplicative productions?) to what it means for a document to be "utilized during a proceeding" before the court.